**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-25346-BLOOM/Elfenbein**

ESTEVENSON DORVAL,

Plaintiff,

v.

HOST HOTELS & RESORTS, INC.,
d/b/a JW MARRIOT HOUSTON BY THE
GELLERIA, MARRIOTT INTERNATIONAL, INC.,
and KONE, INC.,

Defendants.
______________________________/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff Estevenson Dorval's Motion for Final Summary Judgment as to Count II, Count IV, Defendant's, Marriot Hotel Services, LLC, Affirmative Defenses, and Defendant's, Kone, Inc., Affirmative Defenses, ECF No. [58] ("Motion"). Defendant Kone, Inc. ("Kone") filed a Response in Opposition, ECF No. [68], and Defendant Marriott Hotel Services, LLC ("Marriott") filed a separate Response in Opposition, ECF No. [70]. Plaintiff filed a Reply, ECF No. [74]. The Court has carefully reviewed the Motion, the submissions in support and in opposition, the record, and is otherwise fully advised. For the reasons that follow, Plaintiff's Motion is denied.

## I. BACKGROUND[1]

[1] Defendants dispute several of Plaintiff's statements of material fact based on "evidence" that they have "received." *See generally* ECF No. [69]. However, to properly place a material fact in dispute, Defendants must provide specific "evidentiary citations supporting [their] position . . . ." S.D. Fla. L.R. 56.1(b)(2). Accordingly, the Court could deem any facts not disputed by evidentiary citation to be admitted. *Davis v. Brown*, No. 1:16-CV-00735, 2019 WL 1206431, at *4 (N.D. Ga. Mar. 14, 2019) (applying the Northern District of Georgia's substantially similar local rule and deeming facts admitted where "Plaintiff simply denied Defendants' claims of undisputed facts or stated she 'is without sufficient information to respond'

This case arises from an elevator incident that occurred on May 18, 2024 at the JW Marriott Houston by the Galleria in Houston, Texas (the "Hotel"). ECF No. [60] ¶ 1. Plaintiff was a guest at the Hotel when he sustained an injury caused by elevator #2 ("Elevator #2").[2] *Id.* ¶ 2. Marriott operated and managed the subject premises, and Kone contracted to maintain, service, and repair the elevators at the subject premises. *Id.* ¶ 12.

Unreliable elevators can be unsafe and can injure passengers. *Id.* ¶ 14. According to the Service Agreement between Marriott and Kone, an elevator was deemed unreliable if it exceeded six callbacks per year or if it exceeds one callback per month for three continuous months. *Id.* ¶ 15. Prior to the incident, Elevator #2 experienced one callback per month for five continuous months from September 2023 through January 2024. *Id.* ¶ 17. Marriott initiated 15 callbacks to Kone regarding Elevator #2. *Id.* ¶ 18. Elevator #2 also experienced nine callbacks within the 12 months before the incident, thereby exceeding the six-callback threshold for reliable service under the Service Agreement. *Id.* ¶ 19. Similarly, the one callback per month for five continuous months exceeded the three-month threshold for reliable service under the Service Agreement. *Id.* ¶ 20.

---

to various paragraphs in Defendants' statement of material facts.").

Simultaneously, however, the Court is required to "review all of the evidentiary materials submitted in support of the motion for summary judgment." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). It is further required to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). In doing so, the Court is not required to ignore contradictions between Plaintiff's proffered version of events and those reflected in the record.

In light of this, the Court draws its recitation of the background from Plaintiff's Statement of Material Facts, but it simultaneously strives to "satisfy itself that all the evidence on the record supports the uncontroverted material facts that the movant has proposed." *Steenback v. Fed. Express Corp.*, No. 12-61515-CIV, 2013 WL 12085475, at *4 (S.D. Fla. Aug. 21, 2013) (citations omitted).

[2] Defendants dispute that Plaintiff was injured in the manner he alleges, as they contend that there is no evidence that Elevator #2 "dropped multiple floors" and no report of injury at the time of the event. ECF No. [59-3] at 44:16–22; *see also* ECF No. [59-5] at 276:23–25, 277:1–5, 243:9–11.

Because Elevator #2 did not meet the criteria for reliability, Plaintiff contends Defendants were required to remove it from service prior to the incident. *Id.* ¶ 21.[3]

Notwithstanding, Defendants permitted Plaintiff to utilize Elevator #2 without warning or notifying him of the elevator's unreliable condition. *Id.* ¶ 23. After the incident, Elevator #2 was removed from service until Kone responded and serviced it. *Id.* ¶ 24.

After the incident, Plaintiff was treated at an urgent care facility for injuries including low-back pain, right shoulder pain with difficulty rotating his shoulder, left hip pain, and neck pain. *Id.* ¶ 3. Plaintiff was later treated by University Orthopedic, which prescribed medication for pain and muscle relaxation along with at-home therapy exercises. *Id.* ¶ 4. Due to his recurring symptoms, Plaintiff underwent a lumbar radio frequency ablation in 2024, which temporarily relieved his symptoms. *Id.* ¶ 5. However, the therapeutic effects subsided, and Plaintiff underwent a second ablation in May 2026. *Id.* ¶ 6.

Plaintiff, who is 48 years old, works for the City of North Miami as a code-enforcement inspector. *Id.* ¶ 7. Plaintiff's position requires that he drive to properties, get out of his vehicle, enter residential and commercial properties, conduct walkthroughs, and occasionally walk stairs. *Id.* ¶ 8. As a result of his injuries, Plaintiff experiences pain when sitting for too long, sleep disruption caused by recurrent back pain, and intermittent back, neck, shoulder, and hip pain for which he continues to use pain and muscle relaxing medication. *Id.* ¶ 9. Furthermore, Plaintiff experiences pain, limitations, mental anguish, future care, loss of enjoyment of life, and diminished quality of life as a result of his injuries. *Id.* ¶ 10. His loss of enjoyment, diminished capacity, and diminished quality of life manifest in reduced activities with his daughter, difficulty attending his

[3] Defendants dispute that there were any "repeated" or otherwise consistent issues with Elevator #2. ECF No. [59-5] at 79:21–25, 80:1–9, 105:5–14.

daughter's softball games, and difficulty teaching his daughter how to ride a bike because bending and holding the bike causes strain. *Id.* ¶ 11. Plaintiff seeks $5 million in damages caused by the incident. *Id.* ¶ 25.

Plaintiff seeks summary judgment on certain claims set forth in the Second Amended Complaint: Count II, his Negligence claim against Marriott, and Count IV, his Negligence claim against Kone, as well as each Affirmative Defense; he also seeks certain findings under Federal Rule of Civil Procedure 56(g). ECF No [58].

## II. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* FED. R. CIV. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Liberty Lobby, Inc.*, 477 U.S. at 24–48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby, Inc.*, 477 U.S. at 252.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from these facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## III. DISCUSSION

### A. Count II—Negligence Against Marriott

In the Motion, Plaintiff argues that final summary judgment should be granted as to Count II, as the undisputed facts confirm Marriott's operation and management, duty, breach, notice, causation, and damages. ECF No. [58] at 8. Marriott responds that Plaintiff "conflates a private contractual performance metric with the tort standard of care under Texas law." ECF No. [70] at 4–5. Moreover, Plaintiff fails to establish that Marriott breached any duty owed to Plaintiff, as the

existence of maintenance callbacks, without more, are not an unequivocal indication of negligence. *Id.* at 5–10. Plaintiff replies that because Marriott did not properly place any facts in dispute, the Court should deem Plaintiff's Statement of Material Facts admitted. ECF No. [74].

As an initial matter, the Court finds that Texas law applies.[4] Texas law states that "[u]nder the general umbrella of negligence, there are distinct species of claims . . .." *Odom v. Kroger Tex., L.P.*, 2014 WL 585329, at *3 (N.D. Tex. 2014). One such species of claim is "negligent action," and another is "premises liability"—the two operate as distinct claims under Texas law. *Allen v. Wal-Mart Stores Tex., LLC*, 2015 WL 1955060, at *5 (S.D. Tex. 2015). Under Texas law, "a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner," but not both. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016).

"Whether a person injured on another's property has a general negligence claim or a premises liability claim depends on the factual circumstances of the case." *Barron v. United States*, 111 F.4th 667, 671 (5th Cir. 2024), *certified question accepted* (Aug. 9, 2024), *certified question dismissed* (Sept. 20, 2024) (citation omitted). "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply." *Occidental Chem. Corp.*, 478 S.W.3d at 644 (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264

---

[4] The parties do not dispute that because Plaintiff's alleged injury occurred in Texas, Texas' negligence law applies. *See Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (adopting the "significant relationships test" for determining which state's substantive law applies to a personal injury action, which considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered"); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 85 L.Ed. 1477 (1941) (holding that forum state's choice of law rules apply in a diversity action).

(Tex. 1992)). Stated differently, a general negligence claim is available when an injury results from "a malfeasance theory based on affirmative, contemporaneous conduct." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). By contrast, a premises liability claim is available when the alleged injury concerns "a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Id.* And Texas law is abundantly clear that the naming of a claim does not change its nature: "if a claim is properly determined to be one for premises defect, a plaintiff cannot circumvent the true nature of the claim by pleading it as general negligence." *Id.* at 480 (internal citations omitted and cleaned up).

Here, Plaintiff's claim sounds in premises liability, so the relevant Texas legal standard requires Plaintiff to show the following:

> (1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [the plaintiff]; (3) that [the defendant] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [the defendant's] failure to use such care proximately caused [the plaintiff's] personal injuries.

*United Scaffolding*, 537 S.W.3d at 471 (internal citation omitted). A premises owner has a duty to "make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015).

One additional point of law merits explanation—whether a standard expressed in a contract can serve as conclusive evidence of negligence towards a third party. As a general matter under Texas law, parties to a contract may not seek "to control rights and responsibilities in tort of one or the other or both of them to parties outside the contract." *Austin Rd. Co. v. Evans*, 499 S.W.2d 194, 199 (Tex. Civ. App. 1973), *writ refused NRE* (Oct. 3, 1973). For instance, "[a]n agreement

between two parties cannot serve to negate either party's legal duties to a third party." *Drain v. Galveston Cnty.*, 999 F. Supp. 929, 936 (S.D. Tex. 1998). Indeed, in the *Black ± Vernooy Architects v. Smith*, house guests suing an architectural firm sought to "extend the contractual duty owed to the [homeowners] into a common law duty owed to the [house guests] as visitors to the [] home." 346 S.W.3d 877, 881 (Tex. App. 2011). The Texas Court of Appeals declined to find such a duty, explaining that while the architects had agreed to "make periodic visits to the construction site, to report observed deviations from the design plans to the [homeowners], and to guard the [homeowners] against defects in the construction of the home," that did not translate into a duty to "protect house guests of their clients." *Id.*

However, Texas law does contemplate certain circumstances in which the contractual relationship between two parties may substantively affect the rights in tort of a third party. For instance, in *Ely v. Gen. Motors Corp.*, the Texas Court of Appeals addressed a wrongful death suit brought by a third party against General Motors and citing its contract with a dealer called Dow. 927 S.W.2d 774, 780 (Tex. App. 1996), *writ denied* (Dec. 13, 1996). The third party argued that a tort duty was "created by the contract between General Motors and Dow." *Id.* at 781. The Court of Appeals explained that such a third-party "tort duty may arise from a contractual relationship." *Id*. Similarly, in *Wilson v. Goodyear Tire & Rubber Co.*, the injured third party argued that "violation of one or more of the terms of the settlement agreement constitutes negligence per se." 753 S.W.2d 442, 445 (Tex. App. 1988), *writ denied* (Mar. 22, 1989). The Court of Appeals disagreed with that argument but not because a contract could not dictate a tort standard. *Id*. Instead, it assumed that the third party was a third-party beneficiary, found that "when the contract forms the basis of a tort duty, violation of the duty should be tried under the rules of tort law," and found that tort law did not support a finding of negligence *per se*. *Id*.

Ultimately, the line between the two types of cases is a fine one that is not particularly well-defined in the law, and the best standard applicable is that the contract can serve as "some evidence of the standard of care." *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 93 n.6 (Tex. App. 1998). That is, much like compliance with industry and statutory standards, a contract is not dispositive of the appropriate standard of care in a tort case, especially where the third party is not argued to be a third-party beneficiary. *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 50 (Tex. App. 2002). That is consistent with Texas state court holdings. For instance, in *3D/I + Perspectiva v. Castner Palms, Ltd.*, the Texas Court of Appeals explained that "even if we were to impute some explanation of the applicable professional standard of care into the contract, expert testimony would still be required to establish that standard of care." 310 S.W.3d 27, 31 (Tex. App. 2010). That is, a contract may matter to discerning the applicable standard of care, but it is not dispositive.

That approach is applicable here, where it is not clear that the Elevator Service Agreement's use of the term "reliable service" is synonymous with "reasonable risk of harm." *See* ECF No. [59-1] § 3(b)(v). There is no doubt that an elevator fails to satisfy the standards for reliability when it exceeds six callbacks per year or one callback per month for three continuous months. *Id*. But it is not clear that failure to meet that standard necessarily means an "unreasonable risk of harm." *United Scaffolding*, 537 S.W.3d at 471 (internal citation omitted). Indeed, callbacks happen for all sorts of reasons, some of which have no relationship to rider safety. The maintenance log for Elevator #2 reflects as much, showing callouts for the elevator merely stopping. ECF No. [59-7]. Fundamentally, reliability is a broader concept than "unreasonable risk of harm." No doubt, reliability encompasses "unreasonable risk of harm," as an unreasonably risky elevator is certain to be unreliable. But the same cannot be said in reverse—not every instance of elevator unreliability brings with it a risk of harm, much less the type of harm alleged here.

As such, summary judgment is denied on Count II. As to the first and second elements of premises liability, Plaintiff has not shown that Marriott was on notice of a particular "condition" on the premises that posed an unreasonable risk of harm. There is competing testimony that the callbacks covered many different kinds of issues—some related to rider safety, some not. For instance, Kone's corporate representative testified when asked if Marriott was on notice of recurring problems with Elevator #2:

> Well, as we go through the calls, there's not repeat issues on the same thing. There's a variety of different callouts that we've identified. There's not a repeat action that we're talking about here. And again, we talked about the fact that not -- what you're reading from is literally just verbiage from a client to the owner to a call center. It – it's not facts of what actually was completed. And there is -- even though we've went through a handful of callouts, if you'll notice, they – they're not repeat. They're not repeat callouts. They're not repeat situations. So there is no evidence of a trend. They're just callouts. Elevators have callouts.

ECF No. [59-5] at 79:21–25, 80:1–9. Indeed, the corporate representative specifically responded to Plaintiff's claim that there were "repeated callouts" for Elevator #2:

> The facts are the callouts that we've been reviewing for the last 35 minutes. There -- there is a there is evidence of callouts. There is not evidence of repeat issues. All of the issues, as you said earlier, were isolated incidents that happened, were resolved and returned to service. When that – and then that did not occur again days and weeks later. There was different issues. So, there doesn't need to be an action plan for repeat issues because they're -- they weren't repeat issues.

*Id.* at 105:5–14. The corporate representative testified that "all the same callouts we reviewed already [] were all not related to the same thing, and some of them were due to power." *Id.* at 165:8–10. Given this record evidence, Plaintiff has not established—beyond any reasonable jury's ability to conclude otherwise—that Marriott had notice of any "condition" that posed an unreasonable risk of harm, because the types of callbacks were so wide-ranging. It certainly has not been shown by undisputed fact that Marriott was on notice of the "specific phenomenon" that allegedly injured Plaintiff. *Otis Elevator Co. v. Robinson*, 287 F.2d 62, 65 (5th Cir. 1961). Even if

the elevator was "unreliable" by the contract's terms, it does not follow that there was some safety-related condition for which Defendant was on notice.

Similarly, Plaintiff has not shown that Defendant failed to exercise reasonable care to reduce or eliminate the risk. With every callback, there is evidence of Marriott procuring servicing of the elevator. ECF No. [59-7]. On at least three recorded occasions, the elevator was left out of service until additional work could be done on it. *Id.* at 7, 8. Kone's corporate representative testified:

> Again, it doesn't show any negligence. Elevators have callouts. They are repaired. We have a contract that we follow. When we fall outside of those guidelines, there's a -- a report that's created for Marriott where we outline actions that are going to be taken, which were done and completed. It's all still within the confines of the contract and within code.

ECF No. [59-5] at 165:11–18. Whether those actions constitute reasonable care to reduce or eliminate the risk of the type of harm allegedly experienced by Plaintiff is a matter of fact subject to reasonable dispute.

Moreover, there is a material factual dispute as to whether a failure by Marriott to use reasonable care *caused* Plaintiff's personal injuries. Kone's corporate representative testified:

> Q. If the elevator had plunged on May 18th as claimed by the plaintiff, is this something that would have been apparent to the mechanic on May 20, even if such claim was not communicated to them?
> A. The -- the way it was described to me? Absolutely, 'cause it would be -- the governor would have been tripped or something significant would have happened.

ECF No. [59-5] at 276:23–25, 277:1–5. He stated, "I explained in pretty good detail to you that the way it was described is 100 percent impossible to even happen." *Id.* at 243:9–11. Without weighing the credibility of different testimonies, the Court cannot resolve the factual question of whether and how Plaintiff's alleged injuries actually occurred. For all those reasons, the Court denies Plaintiff's Motion as to Count II.

**B. Count IV—Negligence Against Kone**

Under Texas law, a standard negligence claim requires proof of the following: a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by the defendant's breach. *Federal Sav. & Loan Ins. Corp. v. Texas Real Estate Counselors, Inc.*, 955 F.2d 261, 265 (5th Cir.1992) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)). Whether a duty exists is a threshold question of law in a negligence case, and it is to be resolved by the court based on the facts surrounding the occurrence in question. *HNMC, Inc. v. Chan*, 683 S.W.3d 373, 380 (Tex. 2024) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

Furthermore, "[b]reach of a duty proximately causes an injury if the breach is a cause in fact of the harm and the injury was foreseeable." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016). "Cause in fact requires 'proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ("but for" the act or omission), the harm would not have occurred.'" *Id.* (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 122 (Tex. 2009)).

In the elevator maintenance context, Texas law provides that "an entity or individual assuming control over the maintenance and repair of an elevator becomes charged with the common law duty to elevator users to exercise ordinary care to maintain the elevators in a condition of reasonable safety for use." *Grayson v. DSM Nutritional Prods., LLC*, No. 3:18-CV-00061, 2019 WL 829692, at *4 (S.D. Tex. Feb. 5, 2019), *report and recommendation adopted*, No. 3:18-CV-00061, 2019 WL 764313 (S.D. Tex. Feb. 21, 2019) (citations omitted).

Plaintiff argues that the undisputed facts show that Kone contracted to maintain Elevator #2 and received sufficient callbacks to undercut Elevator #2's reliability, and as a result, Kone had a duty to take Elevator #2 out of service. ECF No. [58] at 11. Kone breached this duty in (1) failing

to remove Elevator #2 from service until reliable operation was restored, (2) failing to identify Elevator #2 as unreliable, and (3) failing to prepare a required written action plan. *Id*. Those breaches proximately caused Plaintiff's injuries. *Id.*

Kone responds, first, that Plaintiff improperly relies on "a duty ostensibly born and existing only in a contract," even though his Complaint pled common-law negligence. ECF No. [68] at 10. Second, the service contract does not require that an elevator be taken out of service even if it does not meet the reliability threshold—Kone cannot breach a duty it does not have, and it did not have a duty to remove an elevator from service. *Id.* at 11. Finally, Kone disputes Plaintiff's allegations underpinning his negligence claim that: the elevator was "unreliable," Kone failed to maintain or service the elevator, Kone had knowledge of a dangerous condition with Elevator #2, and Kone failed to warn Plaintiff of a recurring dangerous condition. *Id.* at 11–15.

Plaintiff's Reply focuses on deficiencies in Kone's Responsive Statement of Facts. ECF No. [74].

The Court disagrees with Kone that Plaintiff's claim sounds in contract and therefore should be barred as "an unpled theory of liability" that Kone has not consented to trying. ECF No. [68] at 10. As the Court discussed above, in certain cases, duties in tort may arise out of contracts. More generally, contracts can certainly be evidence of the standard of care owed in a common-law negligence case. Neither of these phenomena transforms a case into a contract action, and Plaintiff's claim is squarely one of negligence, notwithstanding its reliance on the Service Agreement.

However, the Court agrees that Plaintiff has not established negligence so conclusively that no reasonable jury could find otherwise. The Court agrees that Kone had a "common law duty to [Plaintiff] to exercise ordinary care to maintain the elevators in a condition of reasonable safety

for use." *Grayson*, 2019 WL 829692, at *4, *report and recommendation adopted*, 2019 WL 764313 (citations omitted). But the Court is not satisfied that breach or causation have been adequately shown.

As to a breach, notwithstanding Plaintiff's claim that the elevator should have been taken out of service if it was unreliable, Marriott's corporate representative testified that "[t]here was no record of the elevator being unsafe before [Plaintiff]'s incident." ECF No. [59-3] at 168:9–10. Furthermore, Kone's corporate representative testified:

> There's absolutely no evidence of anything before or after this date that justifies that anything remotely close to this has ever happened. There wasn't any sort of report even provided to me about an entrapment or a removal of somebody or even a callout on said day. So I really don't have really any facts to even review.

ECF No. [59-5] at 20:14–20. That same representative testified that Kone disputed that Kone "failed to properly maintain and inspect the elevators by allowing Elevator 2 to fall in disrepair such that it was unreliable." *Id.* at 21:19–21. He elaborated on the maintenance steps taken by Kone:

> [W]e have [the elevators] annually inspected by third-party inspectors. Host also has consultants that do consultant surveys and reviews as well. And no documentation from either their consultant, their onsite staff, or the inspector, do we have any evidence of a problem or lack of maintenance. Again, there's – there's nothing so far that I've seen to justify any of this.

*Id.* at 23:2–9. He explained that Kone does evaluate reoccurring callouts for possible reoccurring causes. Id. at 45:24–25, 46:1–5. He also disputed that Kone was on notice of any "recurring problems" with Elevator #2, stating explaining that there were no "repeat issues on the same thing." *Id.* at 79:11–22. Instead, there were "a variety of different callouts" which were "not repeat situations." Id. at 79:23, 80:7–8. Thus, "there is no evidence of a trend," particularly since "multiple" of the issues were "power related." *Id.* at 80:8–23. Fundamentally, Kone's corporate

representative points out that "[t]here is no past or future history of any of these similar situations happening on that elevator." *Id.* at 24:24–25.

Taken together, the testimony places in dispute whether Kone failed to exercise ordinary care to maintain Elevator #2 in a condition reasonably safe for use. "Summary judgment is forbidden when there are genuine disputes concerning material facts." *Trs. of Sabine Area Carpenter's Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.*, 704 F.2d 822, 824 (5th Cir. 1983). And the question of whether a defendant acted with ordinary care is one of fact. *Islas v. United States*, No. SA-19-CV-00322-XR, 2020 WL 7488172, at *4 (W.D. Tex. Dec. 17, 2020) (citations omitted).

As to causation, there also exist disputed facts. Kone's representative testified:

> There has been no facts provided to me to substantiate that this event even happened. I have no photo. I have no -- no video. I have no incident report. I have no callout. I saw no damage on the unit. All these things that are being described in his complaint would have had actions and reactions after that. None of those are evident in -- in any documentation that I can see.. . . [A]t this point, based on what I've been presented, there's nothing here.

*Id.* at 22:6–17. Indeed, he explained that there was "no evidence that this even occurred." *Id.* at 39:12–13. He even stated that he couldn't "really give you a synopsis of the ways this could have occurred because it couldn't. This couldn't have happened like in the way [Plaintiff] described it." *Id.* at 203:23–25, 204:1. The way Plaintiff described it was "physically impossible." *Id.* at 205:6–7.

If credence is given to this testimony—that an event such as the one described by Plaintiff could not have occurred or at least would have generated additional documentation or evidence of some sort, and no such documentation or evidence existed—that is enough to raise a dispute that the events happened as described. Thus, summary judgment on Count IV is denied.

**C. Affirmative Defenses**

Plaintiff argues that Defendants "failed to present any evidence" supporting their affirmative defenses. ECF No. [58] at 13. Kone does not respond. ECF No. [68]. Marriott rejects that its affirmative defenses all rely on Florida law but seeks leave to amend its affirmative defenses that do rely on Florida law. ECF No. [70]. Plaintiff's Reply does not address the affirmative defenses. ECF No. [74].

On a summary judgment motion based on an affirmative defense, "the same legal standards and burden shifting rules are applicable." *Darby v. Carnival Corp.*, No. 19-21219-CIV, 2021 WL 6424601, at *1 (S.D. Fla. Nov. 19, 2021), *report and recommendation adopted*, No. 19-21219-CIV, 2022 WL 105216 (S.D. Fla. Jan. 11, 2022). Movants must show that the nonmoving party cannot maintain these defenses by a preponderance of the evidence. *Eli Rsch., LLC v. Must Have Info Inc.*, No. 2:13-CV-695-FTM-38CM, 2015 WL 5934632, at *2 (M.D. Fla. Oct. 6, 2015) (citation omitted). Importantly, "merely stating there is no evidence to support the affirmative defenses is not enough to prevail on summary judgment." *Eli Rsch.*, 2015 WL 5934632, at *3; *see also U.S. v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). "Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *Four Parcels*, 941 F.2d at 1438 (citation omitted). That is, the movant "has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013).

On this issue, the Eleventh Circuit has been clear that "[e]ven after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). And that is precisely what Plaintiff has done. Plaintiff

merely states that "the admissible record evidence directly refutes Defendants' unsupported defenses." ECF No. [58] at 13. Plaintiff does not "point to materials on file that demonstrate that" Defendants "will not be able to meet [their] burden." *Coats & Clark, Inc.*, 929 F.2d at 608. As such, summary judgment on Defendants' affirmative defenses is not appropriate. However, at this late stage in the proceedings—particularly where the deadline to amend pleadings had long passed by the time the Motion was filed, *see* ECF No. [13]—the Court will not allow Marriott to amend its affirmative defenses.

**D. 56(g) findings**

Plaintiff asks the Court to enter Rule 56(g) findings establishing the following as to Marriott:

i. DORVAL was an invitee and lawful guest at the JW Marriott Hotel on the date of Loss;
ii. MARRIOTT HOTEL operated and managed the subject premises on the date of Loss;
iii. MARRIOTT HOTEL owed DORVAL a duty to provide continuous reliable elevator operation;
iv. Elevator #2 met MARRIOTT HOTEL's unreliability criteria before the Loss;
v. MARRIOTT HOTEL had actual and constructive notice of elevator #2's unreliable condition;
vi. MARRIOTT HOTEL breached its duty to provide continuous reliable elevator service when elevator #2 performed a sudden stop with DORVAL as a passenger;
vii. MARRIOTT HOTEL breached its duty to warn DORVAL of elevator #2's unreliable operating condition;
viii. MARRIOTT HOTEL breached its duty to identify elevator #2 as unreliable;
ix. MARRIOTT HOTEL breached its duty to prepare and approve a written action plan for elevator #2;
x. DORVAL did not misuse, tamper with, or cause elevator #2 to operate unreliably;
xi. The Loss injured DORVAL's back, neck, shoulder, and hip;
xii. DORVAL experienced pain, limitations, diminished quality of life, diminished capacity, and loss of enjoyment for life as a result of the Loss;
xiii. DORVAL's damages claim for $5million is undisputed and MARRIOTT HOTEL failed to present admissible record evidence of a material fact issue on damages.

ECF No. [58] at 10–11.

Plaintiff also asks the Court to enter Rule 56(g) findings establishing the following as to Kone:

i. DORVAL was lawful guest at the JW Marriott Houston by the Galleria when elevator #2 operated unreliably and performed a sudden stop with DORVAL as a passenger.
ii. KONE agreed to service and maintain elevator #2 at the premises.
iii. KONE had a duty to ensure elevator #2 provided continuous reliable operation;
iv. KONE had a duty to identify and action-plan elevator #2 as unreliable unless and until reliable service was restored;
v. Prior to the Loss, Elevator #2 was unreliable under KONE's reliability criteria;
vi. KONE had actual notice of elevator #2's unreliable condition;
vii. KONE's breached its duty when it failed to remove elevator #2 from guest
viii. service;
ix. KONE breached its duty when it failed to identify and action-plan elevator #2 as unreliable;
x. KONE's breach was the direct and proximate cause of DORVAL's injuries;
xi. The Loss injured DORVAL's back, neck, shoulder, and hip.
xii. DORVAL experienced pain, limitations, diminished capacity, diminished quality of life, and loss of enjoyment for life as a result of the Loss; and
xiii. DORVAL's damages claim for $5million is undisputed and KONE failed to present admissible record evidence of a material fact issue on damages.

*Id.* at 11–12.

Kone does not respond to this argument. ECF No. [68]. Marriott argues that the Court should not enter Rule 56(g) findings that Marriott owed Plaintiff a duty to provide continuous reliable elevator operation, as that is not the standard of case under Texas law. ECF No. [60] at 10. Similarly, the Court should not enter the remaining findings, as every fact Plaintiff's motion asks the Court to rule on is disputed. *Id.* Plaintiff responds that "because Defendants failed to properly controvert Plaintiff's supported facts, the Court should enter Rule 56(g) findings narrowing the issues for trial." ECF No. [74] ¶ 6.

Federal Rule of Civil Procedure 56(g) comes into play "only after the court has applied the summary-judgment standard carried forward in subdivision (a) to each claim, defense, or part of a claim or defense, identified by the motion." *Doe v. Bibb Cnty. Sch. Dist.*, 126 F. Supp. 3d 1366,

1375 (M.D. Ga. 2015), *aff'd*, 688 F. App'x 791 (11th Cir. 2017). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). "Such an order is warranted where the moving party has met its burden and non-movant fails to adduce competent evidence of specific facts alleged." *Disler v. Royal Caribbean Cruise Ltd.*, No. 17-CV-23874, 2019 WL 1316995, at *6 (S.D. Fla. Feb. 19, 2019), *report and recommendation adopted*, No. 17-23874-CIV, 2019 WL 1992929 (S.D. Fla. Mar. 15, 2019) (citation omitted).

Importantly, "Rule 56(g) unambiguously permits, *but does not require*, the Court to enter judgment on discrete factual questions." *Obremski v. Armor Corr. Health Servs., Inc.*, 467 F. Supp. 3d 1265, 1285–86 (S.D. Fla. 2020) (citing Fed. R. Civ. P. 56(g)). As Rule 56(g)'s Advisory Committee's notes make clear, "[e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established." Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. In such circumstances, the "court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." *Id.*

Here, the Court is unprepared to enter Rule 56(g) findings, concluding that doing so would cause "logistical problems" and "would not necessarily aid the jury or save time at trial." *Molbogot v. MarineMax E., Inc.*, No. 20-CV-81254, 2022 WL 2817873, at *2 (S.D. Fla. July 19, 2022). The Court has already explained that the term "reliable" as used in the Service Agreement, while perhaps probative of the standard of care, is not dispositive and does not create an extracontractual tort duty that supplants the usual duties of care applicable to Defendants Marriott and Kone. Moreover, the Court has explained that it does not find that any reasonable jury would necessarily

conclude that either Defendant breached its duty or that the event occurred as Plaintiff describes. And any remaining undisputed facts—such as Plaintiff's presence at the Hotel on the date in question or that Kone agreed to service and maintain Elevator #2 at the premises—would necessarily arise at trial anyway, so the Court finds that a Rule 56(g) finding would only serve to awkwardly sever the presentation of evidence. Thus, the Court declines to enter Rule 56(g) findings.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment, **ECF No. [58]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 19, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record